UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CESAR SALINAS,**

   Plaintiff,

v.                                           No. 4:22-CV-0837-P

**STEVE LOUD, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Officer Teresa Torres's and Defendant Officer Steve Loud's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* ECF Nos. 8 (Torres); 15 (Loud). Because the Court finds that Defendants are entitled to qualified immunity, their motions are **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff Cesar Salinas sued Defendants—two Fort Worth police officers—under 28 U.S.C. § 1983 after he was arrested at the Stockyards in Fort Worth, Texas on September 20, 2020. ECF No. 1 at 3. According to his complaint, Defendants were investigating a woman's report that a man had groped her outside of a bar. *Id.* at 3–4. Although Plaintiff had not yet been identified as the perpetrator, Defendants approached, questioned, and ultimately arrested him. *Id.* at 4. Plaintiff asserts that Defendants used excessive force by smashing his face into the ground—causing him to bleed from the mouth—during his arrest. *Id.* at 12–14, 18–25. For support, Plaintiff included several screenshots of video footage from Officer Loud's body camera in his complaint. *See id.* at 7–17.

The actual body camera footage depicts a different story. The video begins with Officer Loud following Plaintiff as Plaintiff walked away from him while talking on his cell phone. ECF No. 11 at 0:00–1:00. Officer Loud asked for Plaintiff's identification, and Plaintiff complied,

handing Officer Loud his driver's license. *Id.* at 0:25. Officer Loud then asked Plaintiff to follow him to his police vehicle, but Plaintiff was uncooperative. *Id.* at 1:00.

Officer Loud signaled with his flashlight for another officer to assist. *Id.* at 1:01. In response, Officer Torres approached Officer Loud and Plaintiff who was still talking on the phone. *Id.* at 1:07. Officer Loud told Officer Torres that a female had been groped by either Plaintiff or an unidentified individual and that Plaintiff would not cooperate. *Id.* at 1:08–20. She then gently tapped Plaintiff on the back, asking to speak with him, but he ignored her, all the while continuing to talk on the phone. *Id.* at 1:23. Officer Torres stated that she was "taking over," but Plaintiff ignored her. *Id.* at 1:28. Officer Torres then grabbed Plaintiff's hand that held his phone up to his ear, attempting to handcuff him and pull his hand away from his face and behind his back. *Id.* at 1:30. Plaintiff resisted, so Officer Torres told him to "stop" four times. *Id.* at 1:31–1:37. Plaintiff did not stop resisting, which caused Plaintiff and Officer Torres to spin around in a physical struggle. *Id.* at 1:37–1:40. With Officer Loud's help, Officer Torres then took Plaintiff to the ground and handcuffed him. *Id.* at 1:45. During the takedown, Plaintiff hit his face on the cement, causing his mouth to bleed. *Id.* Following the takedown, Plaintiff shouted profanities and racial slurs at Defendants and refused medical care. *Id.* at 1:45–4:00.

Plaintiff sued Defendants on September 19, 2022—one day before the two-year statute of limitations expired—under § 1983 asserting an excessive force claim in violation of the Fourth Amendment. ECF No. 1 at 18. Summons were issued the same day, but Officer Torres was not served until October 18, 2022, and Officer Loud was not served until October 24, 2022. ECF Nos. 4–6. Defendants each moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 8; 15. Defendants contend that this case should be dismissed as time-barred and because they enjoy qualified immunity. *See* ECF Nos. 8; 15.

## LEGAL STANDARD

To survive a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts all well-pleaded facts as true, drawing all inference in favor of and viewing all facts in the light most favorable to the nonmoving party. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

Defendants here assert qualified immunity, which "shield[s] [government officials] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the qualified immunity defense, the burden shifts to the plaintiff to show that (1) he alleged a violation of a constitutional right, and (2) "the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

## ANALYSIS

### A. Statute of Limitations

As an initial matter, Defendants contend that Plaintiff is barred from bringing this case by the statute of limitations. ECF Nos. 8 at 9–14; 15 at 4–5. Specifically, Defendants assert that—although Plaintiff filed his case within the applicable two-year statute of limitations—Defendants were not served until about one month after the statute of limitations expired. ECF Nos. 8 at 9; 15 at 4–5. And they argue that the delay in service should not be tolled because Plaintiff has not demonstrated continuous due diligence in serving Defendants. ECF Nos. 26 at 3–5; 27 at 3–5. Plaintiff counters by providing affidavits detailing his due diligence. ECF Nos. 20; 23. But the Court cannot consider Plaintiff's evidence at the motion to dismiss stage and declines to convert Defendants' motions to dismiss into motions for summary judgment. *See* FED. R. CIV. P. 12(d).

This is because Defendants also argue—as a separate reason for dismissal—that they enjoy qualified immunity. ECF Nos. 8 at 14; 15 at

3

5. Because "[q]ualified immunity is an immunity from suit rather than a mere defense to liability," converting the motions into motions for summary judgment would defeat the purpose of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Conversion would require Defendants to submit evidence, thus rendering their immunity pointless. *See Carswell v. Camp*, No. 21-10171, 2022 WL 17335977, at *2 (5th Cir. Nov. 30, 2022). Thus, Defendants' motions are denied without prejudice as to this issue—but this is ultimately inconsequential, given that the Court finds Defendants are entitled to qualified immunity.

### B. Body Camera Video

Next, the Court addresses whether it may consider Officer Loud's body camera video footage at the motion to dismiss stage. It can.

Ordinarily, the Court—at the motion to dismiss stage—must "do no more than determine whether the plaintiff has file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016) (internal quotation omitted). "When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the [C]ourt can also properly consider those documents." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Several circuit courts have applied this rule to "videos that were attached to, or referenced in, a complaint and central or integral to a plaintiff's claims, when their authenticity was not disputed." *Vega v. City of El Paso*, No. EP-21-CV-0116, 2022 WL 789334, at *4 (W.D. Tex. March 15, 2022) (collecting cases); *see also Robles v. Ciarletta*, 797 F. App'x 821, 832 (5th Cir. 2019); *Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 452 (S.D. Tex. 2021).

Plaintiff repeatedly referenced the body camera video and included nine screenshots of the video, annotated some of the images, and pasted them into his complaint. *See* ECF No. 1 at 7–17. The video is therefore "referenced in the complaint" and "central to the plaintiff's claim[]." *Inclusive Cmtys. Project*, 920 F.3d at 900. Further, the video's

4

authenticity is undisputed. *Vega*, 2022 WL 789334, at *4. The Court is therefore satisfied that it may consider the video at this time.

**C. Qualified Immunity**

Plaintiff fails to overcome Defendants' assertion of qualified immunity because, having reviewed the entirety of Officer Loud's body camera video footage, the Court finds no violation of Plaintiff's constitutional right to be free from excessive force. And even if there was a violation, Plaintiff has not met his burden of pointing to precedent clearly establishing that right.

1. <u>Prong 1: Violation of Plaintiff's constitutional rights</u>

Plaintiff contends that Defendants used excessive force when arresting him in violation of the Fourth Amendment. ECF No. 1 at 18. To state a prima facie excessive force claim, a plaintiff must allege "(1) [an] injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citations omitted). "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* (quotation omitted). The Court must "analyze the excessive force claim without regard to whether the arrest itself was justified."[1] *Id.* at 417.

Plaintiff states that he was cooperating with Officer Loud when Officer Torres inexplicably approached Plaintiff, grabbed his phone, swung him around, and slammed him into the ground, causing a cut to his lip, a bruise on his cheek, a "knot above his left eyebrow, and swelling on his head." ECF No. 1 at 17. Plaintiff asserts that he was never told that he was being arrested and that Officer Torres never gave him any

---

[1] The Court must separately analyze qualified immunity as applied to each individual defendant. *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015). But because Officer Torres had significantly more contact with Plaintiff than Officer Loud, given that Officer Loud only touched Plaintiff when Defendants took Plaintiff to the ground, the Court primarily analyzes qualified immunity as applies to Officer Torres. And because Officer Torres is entitled to qualified immunity, Officer Loud—who had far less physical contact with Plaintiff—is too.

5

instructions other than to "stop," so he was not actively resisting arrest when Officer Torres took him to the ground.[2] *See id.* at 7–17. Thus, Plaintiff contends that the force used against him was unreasonably excessive. *Id.* at 18–25.

Much of Plaintiff's recitation of the facts are refuted by the body camera video. And when a video clearly contradicts the plaintiff's assertion of the facts, the Court "accept[s] the video's depiction instead of the nonmovant's account." *Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (quotation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014) (applying this rule in the summary judgment context). The Court must therefore consider whether the video, viewed in the light most favorable to Plaintiff, establishes a prima facie excessive force claim. It does not.

Plaintiff has established the first element of his excessive force claim. The first element requires that there be an actual injury. *See Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). If there is an actual injury, the Court then characterizes the extent of the injury using a sliding scale— the greater the injury, the more likely the Court will find that the force was clearly excessive and unreasonable. *See id.*

Plaintiff was injured. The video shows Plaintiff's blood pooling on the ground around his mouth after he was taken to the ground by Defendants. ECF No. 11 at 1:45–4:00. Plaintiff also asserts that he suffered a bruised cheek, swelling on his head, and a knot above his left eyebrow. ECF No. 1 at 17. But Plaintiff's injuries are "minor," considering that "[c]ourts have found similar or worse injuries to be minor." *Solis*, 31 F.4th at 982 (citing *Buehler v. Dear*, 27 F.4th 969, 983 (5th Cir. 2022); *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018)).

---

[2] To the extent that Plaintiff contends that his arrest was unlawful, he has not asserted an unlawful arrest claim and the Court will consider the assertion no further. The Court does, however, acknowledge that "whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). So the Court takes the fact that Plaintiff was never told that he was under arrest and that he had not yet been positively identified as the individual who groped the woman into consideration in addressing whether the force used was unreasonably excessive. *Freeman*, 483 F.3d at 417.

6

Plaintiff has therefore satisfied the first element of his excessive force claim, but "the limited extent of [his] injuries" detracts weighs against him when considering the next two elements. *Solis*, 31 F.4th at 982.

As for the second and third elements of Plaintiff's excessive force claim—the amount of force used and the reasonableness of resorting to such force—courts usually consider these elements together. *See id.* When analyzing these elements, the Court considers four factors, including: (1)"the severity of the crime; (2) whether the suspect poses an immediate threat to others; (3) whether the suspect is actively resisting arrest or attempting to flee; and (4) the speed at which the officers resort to force. *See id.* (quoting *Graham*, 490 U.S. at 396); *Solis*, 31 F.4th at 983.

*First*, the severity of the crime at issue cuts against Defendants because Plaintiff was suspected of committing a non-violent misdemeanor offense. ECF No. 1 at 20; *see Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (acknowledging that a misdemeanor is a "minor offense militating against the use of force").

*Second*, Plaintiff did not pose a significant threat to others. True, a pocketknife fell out of Plaintiff's pocket after he was taken to the ground. ECF No. 1 at 14–15. But nothing in the video would reasonably cause Defendants to believe that Plaintiff posed an immediate threat to their safety because they did not notice the knife until after Plaintiff was handcuffed. ECF No. 11 at 1:45–6:00. The Court, however, finds it important that Plaintiff was accused of—and does not deny—inappropriately touching a woman outside of a bar at night. *See* ECF Nos. 1; 8 at 5. It is therefore arguable that Plaintiff posed a safety threat to that woman and other women in the area. On balance, the Court finds that this factor slightly weighs against Defendants.

*Third*, the Court finds that Plaintiff was resisting arrest. "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell*, 868 F.3d at 341. Plaintiff contends that his resistance was merely passive because he simply resisted when Officer Torres tried to pull his arm behind his back. ECF No. 22 at 23–25. He relies on *Trammell* for support. *See id.* But *Trammell* is inapposite

7

because the plaintiff in *Trammell* "was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." 969 F.3d at 343. Moreover, the Fifth Circuit has "acknowledged that 'a suspect who backs away from the arresting officers is actively resisting arrest—albeit mildly.'" *Solis*, 31 F.4th at 982–83 (quoting *Buehler*, 27 F.4th at 984).

As described above, the video clearly shows Plaintiff refusing—or at least ignoring—Officer Loud's request for Plaintiff to accompany him to the police vehicle. ECF No. 11 at 1:00. When Officer Torres arrived soon after, Officer Loud told Officer Torres in front of Plaintiff that Plaintiff was suspected of groping a woman outside of a bar. *Id.* at 1:07–1:20. Officer Torres then approached Plaintiff, gently tapped him on the back, and asked him for his name. *Id.* at 1:23. Plaintiff ignored Officer Torres's request, instead stating that he already gave Officer Loud his identification. *Id.* at 1:23–1:28. Officer Torres then grabbed Plaintiff's phone and placed handcuffs on his wrist, attempting to lower Plaintiff's hand down and away from his face and behind his back to arrest him. *Id.* at 1:30. Plaintiff physically resisted Officer Torres, to which Officer Torres repeatedly told him to "stop." *Id.* at 1:31–1:37. Plaintiff, however, did not stop resisting, causing the two to spin around and resulting in Officer Torres and—to some extent—Officer Loud taking Plaintiff to the ground and arresting him. *Id.* at 1:37–1:45. From Defendants' vantage point in the moment, Plaintiff's actions could be viewed as actively resisting arrest, unlike *Trammell*, so this factor weighs in Defendants' favor. *See Solis*, 31 F.4th at 983.

*Fourth*, "the speed with which officers resort to force" cuts against Plaintiff's excessive force claim. *Id.* In *Trammell*, "only three seconds elapsed between [the] [o]fficer's . . . initial request that [the plaintiff] place his hands behind his back and when [the officers] tackled [the plaintiff]." 868 F.3d at 342. The court noted that the short lapse in time indicated that "a jury could infer that the officers used very little, if any, negotiation before resorting to physical violence, and that the officers' conduct did not constitute the required 'measured and ascending' actions calibrated to [the plaintiff's] conduct." *Id.* (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)).

8

Unlike *Trammell*, Defendants' conduct here "constitute[s] the 'measured and ascending' actions calibrated to [Plaintiff's] conduct." *Id.* Eight seconds elapsed between the time that Officer Torres tapped Plaintiff on the back and asked for his name to when she grabbed his arm and tried to handcuff him. ECF No. 11 at 1:24–1:32. During the next five seconds, Officer Torres instructed Plaintiff to "stop" four multiple times, but Plaintiff continued to resist. *Id.* at 1:32–1:37. Officer Torres then attempted to force Plaintiff's arm behind his back to handcuff him, but Plaintiff resisted, causing the two to spin around. *Id.* at 1:37–1:42. After the two stopped spinning, Officer Torres told Plaintiff to "stop" two more times. *Id.* at 1:40–1:49. Plaintiff did not stop, so Officer Loud grabbed Plaintiff's free hand, and Defendants took Plaintiff to the ground and handcuffed him. *Id.* at 1:42–1:49. In toto, about 25 seconds passed from Officer Torres's first contact with the suspect to when he was taken to the ground—more than eight times longer than in *Trammell*.

Considering these factors together, the Court cannot say that Defendants' use of force against Plaintiff was "so objectively unreasonable as to violate [Plaintiff's] constitutional rights." *Solis*, 31 F.4th at 983. First, Plaintiff was injured, but his injury can be classified only as minor, weighing in favor of qualified immunity. Second, while two of the four relevant factors weigh against Defendants, "qualified immunity can apply even when only one factor weighs against the plaintiff." *Id.* (citing *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)). Considering that Plaintiff ignored Defendants, his continuous lack of cooperation, and his physical resistance when Officer Torres tried to handcuff him, the Court finds that it was reasonable for Defendants to believe that "*some* degree of force would be necessary to subdue [him]." *Id.*; *see Griggs v. Brewer*, 841 F.3d 308, 311, 316 (5th Cir. 2016) (affirming that the defendants were entitled to qualified immunity where they took down the plaintiff and punched his head several times while detaining him).

Though Defendants may well have used more force than necessary to handcuff Plaintiff, the Court cannot say that Defendants' use of force was clearly excessive and unreasonable. Plaintiff has thus failed to

9

establish a violation of his constitutional right to be free from excessive force.

### 2. Prong 2: Violation of a clearly established right

Even if Plaintiff were able to establish a prima facie excessive force claim, he fails to point to a similar case that clearly establishes a violation of Plaintiff's constitutional rights. "A defendant does not violate 'a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Rogers v. Hall*, 46 F.4th 308, 312 (5th Cir. 2022) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). This means that "the plaintiff must 'point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Id.* at 312–13 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)).

Plaintiff does not point to a specific case clearly establishing the alleged violation. Instead, he cites a plethora of cases that deal generally with excessive force claims, and Plaintiff provides no analysis explaining how those cases compare to this case. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (recognizing that it is the plaintiff's burden to "identify a case that put[s] [a defendant] on notice that his specific conduct was unlawful").

Plaintiff's most applicable case—*Trammell*—falls flat. According to Plaintiff, *Trammell* establishes that Plaintiff's physical resistance was merely "passive," and thus the use of force against him was not justified. ECF No. 19 at 25. Nonsense. As mentioned above, the plaintiff in *Trammell* "was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." 868 F.3d at 343. Additionally, only three seconds elapsed between the time that the officers told the plaintiff to put his hands behind his back and when the officers took the plaintiff to the ground. *Id.* at 342. And, notably, the officers "pummeled [the plaintiff] with their knees and fists in an attempt to get him to put his arms behind his back" even after the

plaintiff told the officers that his arm was "fused," so he physically could not put his arm behind his back. *Id.*

The facts here are a far cry from those in *Trammell*. As discussed above, Plaintiff would not cooperate with Defendants when they asked his name, tried to handcuff him, and told him to "stop" when he physically resisted being handcuffed. And Defendants here engaged Plaintiff for far longer than the officers in *Trammell* before resorting to the takedown maneuver that injured Plaintiff. Finally, the force that Defendants used here was a takedown maneuver and nothing more, while the officers in *Trammell* took the plaintiff down, repeatedly pummeled him after he was on the ground, and tried to force his frozen arm behind his back after he told them that he lacked the mobility to comply.

Because Plaintiff was uncooperative, physically resisted arrest, and Defendants only took Plaintiff to the ground and did not apply further force, the Court cannot say that *Trammell* clearly establishes a right that Defendants violated here. *See Rogers*, 46 F.4th at 312.

## CONCLUSION

Certainly, sailing through the notoriously murky and choppy precedent from the Fifth Circuit in qualified immunity cases is a daunting and confusing task for any district court. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458 (5th Cir. 2022) (relying in part on extra-record sources such as the New York Times and The Guardian in finding no qualified immunity for officer's use of deadly force where suspect resisted arrest and ran over another officer with his vehicle) *with Marie Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding qualified immunity barred suit when officers found suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames"). However, in this case the sailing is smooth and navigating to the legal conclusion is an easy task.

Plaintiff failed to establish a violation of his Fourth Amendment right to be free from excessive force because Defendants' takedown maneuver was not clearly excessive or unreasonable under the

11

circumstances. But even if he did, Plaintiff has not met his burden of pointing to precedent clearly establishing a violation of his constitutional rights. To the extent Plaintiff contends that *Trammell* clearly establishes a right that Defendants violated, *Trammell*'s facts differ so significantly from the facts here that the Court cannot say that any reasonable officer would know that Defendants' use of force violated Plaintiff's constitutional rights as described in *Trammell*.

The Court therefore **GRANTS** Defendants' motions to dismiss (ECF Nos. 8 (Torres); 15 (Loud)) and hereby **DISMISSES** this case **with prejudice**.

**SO ORDERED** on this **14th day of December 2022**.

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE